UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                            Case No. 18-CR-231

TAMI PHILLIPS,

        Defendant.

---

## PLEA AGREEMENT

---

1.      The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Adam Ptashkin, Assistant United States Attorney, and the defendant, Tami Phillips, individually and by attorney Steven Richards, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

**CHARGES**

2.      The defendant has been charged in a one-count information, which alleges a violation of Title 18, United States Code, Section 371.

3.      The defendant has read and fully understands the charge contained in the information. She fully understands the nature and elements of the crime with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.      The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES:**

1. From approximately December of 2013 through approximately November of 2014, in the State and Eastern District of Wisconsin,

**TAMI PHILLIPS** and
Philip Reinhart

knowingly conspired with each other and others to devise and participate in a scheme to defraud the Wisconsin Economic Development Corporation ("WEDC"), and to obtain money from the WEDC by means of materially false and fraudulent pretenses, representations, and promises.

2. The execution of that scheme involved the interstate wire transmission of writings, signs, and signals to accomplish the receipt of fraudulently obtained funds, in violation of Title 18, United States Code, Section 1343.

## Background

3. At all times material to this Information:

 a. The defendant, Tami Phillips ("Phillips"), and co-conspirator Philip Reinhart ("Reinhart") were employed by entities controlled by Ronald Van Den Heuvel ("Van Den Heuvel"). Van Den Heuvel purported to be a businessman in De Pere, Wisconsin.

 b. Van Den Heuvel solicited loans and investments to pursue his "Green Box" business plan, which he represented as a plan to purchase the equipment and facilities necessary to employ proprietary processes that could convert solid waste into

2

consumer products and energy, without any wastewater discharge or landfilling of byproducts.

 c. Van Den Heuvel formed and controlled numerous business entities, including Green Box NA Green Bay, LLC ("Green Box-Green Bay"), a Wisconsin limited liability corporation that Van Den Heuvel formed and represented as pursuing the Green Box business plan in De Pere, Wisconsin.

 d. Reinhart and Phillips worked to support the activities of Green Box-Green Bay in addition to Van Den Heuvel's other business entities.

 e. Between approximately 2011 and 2015, Green Box-Green Bay and related entities obtained funds from lenders and investors, including the WEDC, under materially false pretenses, representations, and promises.

 f. On or about January 4, 2012, the WEDC awarded Green Box-Green Bay a grant of up to $95,500 to reimburse the costs of training employees in waste sorting, fuel pellet production, and liquefaction manufacturing, all of which were part of the Green Box business plan.

### The Scheme

4. At Van Den Heuvel's direction, Reinhart and Phillips agreed to fabricate records about Green Box-Green Bay's training sessions in order to collect the entire $95,500 in grant funds from the WEDC. Reinhart and Phillips knew that the trainings documented in the requests for disbursement of grant funds that were submitted to the WEDC had not occurred, and that the falsified records would cause the WEDC to disburse grant funds to Green Box-Green Bay.

5. Between December of 2013 and November of 2014, Reinhart and Phillips worked together to create three sets of documents related to training sessions purportedly conducted by Green Box-Green Bay. Each set of documents represented that named individuals

3

affiliated with Green Box-Green Bay had received training on particular dates and on specified topics. Each set of documents identified, with specificity, the expenses incurred by Green Box-Green Bay for these training sessions.

6. The records created by Reinhart and Phillips were fraudulent. The listed training sessions that were submitted to WEDC never occurred.

7. On or about December 7, 2013, March 5, 2014, and November 20, 2014, Reinhart and Tami Phillips, at the direction of Van Den Heuvel, finalized the fraudulent training records. In order to draw the WEDC grant funds, Green Box-Green Bay thereafter submitted the fraudulent training records to the WEDC via interstate wire communications.

8. These false records caused the WEDC to disburse the full grant amount of $95,500 to Green-Box Green Bay.

## Overt Acts

9. On December 19, 2013, Reinhart emailed WEDC employee S.S. to confirm that the funds requested by Green Box-Green Bay represented only training costs covered by the WEDC grant.

10. On March 17, 2014, Reinhart emailed WEDC employee J.B. submitting a request for payment of the training grant.

11. On November 21, 2014, Reinhart emailed WEDC employee J.B. submitting a request for payment of the training grant.

All in violation of Title 18, United States Code, Section 371.

4

6. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

   a. At all times relevant to this case, Ronald Van Den Heuvel was a businessman from the Green Bay, Wisconsin area. In early 2011, Van Den Heuvel began seeking funds from investors and lenders for what he called his "Green Box" business plan. As represented by Van Den Heuvel, the Green Box business plan was to purchase the equipment and facilities necessary to employ proprietary processes that could convert solid waste into consumer products and energy.

   b. Van Den Heuvel formed and controlled numerous business entities, including Green Box NA Green Bay, LLC ("Green Box-Green Bay"), which he claimed would pursue the Green Box business plan in De Pere, Wisconsin.

   c. Philip Reinhart ("Reinhart") and Tami Phillips ("Phillips") were employed by entities controlled by Van Den Heuvel. Reinhart began working for Van Den Heuvel in 2007, and Phillips began working for Van Den Heuvel in 2002. In 2013 and 2014, Reinhart and Phillips were both working to support the activities of Green Box-Green Bay in addition to Van Den Heuvel's other business entities.

   d. On or about January 4, 2012, the WEDC awarded Green Box-Green Bay a grant of up to $95,500 to reimburse the costs of training employees from 2012 to 2014 in waste sorting, fuel pellet production, and liquefaction manufacturing. To obtain the reimbursements, Green Box-Green Bay had to submit documentation showing that particular individuals were trained on those particular jobs on particular dates.

   e. In reality, Green Box-Green Bay was not regularly operating from 2012-2104. Nonetheless, Van Den Heuvel directed Reinhart and Phillips to create fraudulent records showing that the training had occurred.

   f. At Van Den Heuvel's direction, Reinhart and Phillips agreed to fabricate training records. Between December of 2013 and November of 2014, Reinhart and Phillips worked together to create three sets of documents related to training sessions purportedly conducted by Green Box-Green Bay. Each set of documents represented that named individuals affiliated with Green Box-Green Bay had received training on particular dates and on specified topics, and identified the expense purportedly incurred by Green Box-Green Bay for these training sessions.

5

g. The information contained in the Green Box-Green Bay training records sent to WEDC was fictitious. Both Reinhart and Phillips knew the records were false, and knew they would be submitted to the WEDC to obtain reimbursement for "trainings" that never happened. Individuals listed in the training records as having received or provided the trainings, including Phillips herself, have confirmed that the trainings did not occur. Van Den Heuvel knew the Green Box-Green Bay training records submitted to WEDC were fabricated.

h. On or about December 7, 2013, March 5, 2014, and November 20, 2014, Reinhart and Phillips, at the direction of Van Den Heuvel, finalized the fraudulent records. In order to draw the WEDC grant funds, Green Box-Green Bay thereafter submitted the fraudulent records to the WEDC via interstate wire communications. For example, on March 17, 2014, and on November 21, 2014, Reinhart emailed WEDC employee J.B. submitting requests for payment of the training grant. Van Den Heuvel ordered the submissions of the fraudulent records to WEDC.

i. Reinhart also responded to follow-up questions from the WEDC about the draw requests. For example, on December 19, 2013, WEDC employee S.S. emailed Reinhart to "make sure that the $56,132.95 that is being requested from WEDC represents wages that were paid by Green Box for training for the individuals listed …. [because] I can only reimburse strictly training costs which can include trainee wages." Reinhart falsely responded, "Yes, that is correct." Reinhart sent this response to WEDC employee S.S. at the direction of Van Den Heuvel.

j. The December 19, 2013, March 17, 2014, and November 21, 2014, emails sent by Reinhart to WEDC were all interstate wire communications that travelled to email servers outside the state of Wisconsin. These emails were sent to WEDC email addresses that traversed Microsoft servers and therefore crossed state lines.

k. Reinhart's and Phillips's false records and representations caused the WEDC to pay the full training grant amount of $95,500 to Green Box-Green Bay. The two knew that although some legitimate training of employees had occurred, the training documented in the paperwork submitted to WEDC in order to receive the grant were false.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: Five years and $250,000. The offense also carries a mandatory special assessment of $100, and a maximum

6

of three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 26 of this agreement.

8. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of conspiracy as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

First, the conspiracy to commit wire fraud as charged in the information existed;

Second, the defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy; and

Third, at least one of the conspirators committed an overt act in an effort to advance the goals of the conspiracy.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea,

7

the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

15. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged is six under Sentencing Guidelines Manual § 2B1.1.

## Specific Offense Characteristics

16. The United States agrees to recommend to the sentencing court that the loss amount applicable to the defendant is a maximum of $95,500, the total amount the WEDC awarded Green Box-Green Bay to reimburse the costs of training employees from 2012 to 2014. The United States agrees to recommend to the sentencing court that an eight-level increase for

8

amount of loss is applicable under Sentencing Guidelines Manual § 2B1.1 for the offense charged.

## Acceptance of Responsibility

17. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

## Sentencing Recommendations

18. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

19. Both parties reserve the right to make any recommendation regarding any matters not specifically addressed by this agreement.

20. The government agrees to recommend a sentence no higher than the bottom of the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

21. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

9

22.     The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

23.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

24.     The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Special Assessment

25.     The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Restitution

26.     The defendant agrees to pay restitution, jointly and severally, to the Wisconsin Economic Development Corporation. The United States agrees to recommend to the Court that the maximum amount of the restitution is $95,500. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court

10

regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S COOPERATION

27. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

28. In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual

11

bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e.    At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on his own behalf.

29. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

30. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

12

31.     The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

32.     The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

33.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

36.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense

13

on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

37. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

38. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

### VOLUNTARINESS OF DEFENDANT'S PLEA

14

39.     The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

15

Case 1:18-cr-00231-WCG   Filed 12/17/18   Page 15 of 16   Document 2

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 12-6-18

TAMI PHILLIPS
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 12-6-18

STEVEN RICHARDS
Attorney for Defendant

For the United States of America:

Date: 12/10/2018

MATTHEW D. KRUEGER
United States Attorney

Date: 12-6-2018

ADAM PTASHKIN
Assistant United States Attorney

16